# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Byron T. Watts,

                Plaintiff,        Case No. 12-cv-692 (SRN/JSM)

v.

Federal Home Loan Mortgage Corp., et al.,    **Wells Fargo's and Freddie Mac's Memorandum of Law in Support of Motion to Dismiss Plaintiff's Amended Complaint**

                Defendants.

## Introduction

Byron T. Watts had a mortgage loan from Wells Fargo Bank, N.A. After Watts defaulted on the loan, Wells Fargo exercised its rights under the mortgage and foreclosed on the property by advertisement under Chapter 580 of the Minnesota Statutes.

In an attempt to avoid foreclosure, Watts engaged in a series of maneuvers—including sending Wells Fargo letters purporting to be Qualified Written Requests ("QWRs") under the Real Estate Settlement Procedures Act ("RESPA"), recording a notice attempting to rescind the loan transaction under the Truth in Lending Act ("TILA") after the foreclosure sale had occurred, and (worst of all) relying on an alleged "default" by Wells Fargo in responding to the alleged QWRs to record a series of documents in which he falsely claims to be an authorized representative of Wells Fargo and purports to rescind the foreclosure sale and transfer the property back to himself and then to a third party.

These tactics did not work. Wells Fargo began eviction proceedings, and Watts responded by suing a laundry list of entities and individuals, including Federal Home Loan Mortgage Corporation ("Freddie Mac"), Wells Fargo, the Olmsted County Sheriff, a Sheriff's Deputy, the law firm that conducted the foreclosure, and various other individuals.

It is extremely difficult to tell what Watts's claims are. They are not just inartfully pleaded (Mr. Watts is proceeding pro se, for artfulness is not to be expected), most of them are simply incomprehensible. Reading the Amended Complaint as charitably as possible, Wells Fargo detects four possible claims: (1) that the foreclosure is invalid because Wells Fargo failed to show him the original, "wet ink" note and mortgage, which he alleges also violates RESPA; (2) rescission of the loan transaction under TILA; (3) that Wells Fargo is in "default" and entered into a "consent judgment" by virtue of its failure to respond to each request and demand in Watts's purported QWR; and (4) that the foreclosure sale is invalid because notices of the foreclosure were published in the Stewartville Star, which Watts alleges is not a proper newspaper in which to publish the notice.

All four of these potential claims fail as a matter of law: (1) Watts's core legal theory regarding the "wet ink" note has been rejected by the Eighth Circuit and the Minnesota Supreme Court, and Watts's letter did not constitute a QWR in the first place; (2) Watts's rescission claim is barred by the three-year statute of repose and his failure to allege an ability to tender the proceeds of the note; (3) there is no legal authority providing for a default and consent judgment for an inadequate response to an alleged

QWR; and (4) the Sheriff's Certificate and Foreclosure Record serves as prima facie evidence that all requirements of law were met in conducting a foreclosure sale of which Watts clearly had actual notice. For these reasons, and because Watts fails to allege any claims against Freddie Mac, Watts's claims against Freddie Mac and Wells Fargo should be dismissed in their entirety and with prejudice.

## Facts

As they must for purposes of this motion to dismiss, Freddie Mac and Wells Fargo take the few factual allegations of the Amended Complaint as true and include additionally relevant facts of public record, which may be considered on a motion to dismiss. *See Cormack v. Settle-Beshears*, 474 F.3d 528, 531 (8th Cir. 2007).

Watts owned property in Olmsted County. (App. 3.) Public records show that on February 24, 2003, he and a co-borrower obtained loan from HomeServices Lending, LLC, dba Edina Realty Mortgage, for $167,500. (App. 1-15.) The loan was secured by a mortgage on the property. (*Id*.) The note and mortgage were assigned to Wells Fargo in 2003. (App. 16.)

Although it is it is unclear from the Amended Complaint, public records show that Watts defaulted on the loan, and Wells Fargo foreclosed by advertisement. (App. 17-33.) The property was sold at a foreclosure sale on July 8, 2011. (*Id*. 30.)

### Watts's Purported QWR

Before the foreclosure sale, on June 27, 2011, Watts sent Wells Fargo a letter that purported to be a "Qualified Written Request" for purposes of RESPA. (Am. Compl., Dkt. 40, p. 3; Ex. A(1), Dkt. 26, pp. 12-31. ) The letter is 20 pages long and contains

extensive requests for documents and information about Watts's loan and mortgage, any alleged securitization of the note and mortgage, any property inspections that had occurred, any broker price opinions that had been conducted, and many other things. (Ex. A(1), Dkt. 26, pp. 12-31.) Watts's letter contains 191 requests for information and documents. (*Id.*)

The letter also claims that Wells Fargo would be in "default" if it did not respond in the manner that Watts desired, and that its purported "default" would constitute an acknowledgment that Watts could rescind any power of attorney related to the note and mortgage and allow <u>Watts</u> to execute and record documents as Wells Fargo's attorney in fact. (*Id.*, pp. 30-31.) Watts's letter also claimed that Wells Fargo's actions in failing to respond fully would constitute an admission that Watts is entitled to damages and to have the loan completely cancelled—*i.e.*, he would get a free house. (*Id.*) According to the Amended Complaint, "Defendant" (presumably Wells Fargo, as Watts addressed his letter only to Wells Fargo) responded by "provid[ing] a statement of account." (Amend. Compl., Dkt. 40, p. 3.)

<u>Watts's Attempt to Rescind the Loan Transaction</u>

On July 26, 2011, after the foreclosure sale had occurred, Watts sent to Wells Fargo (he alleges that he sent the document to "Defendant") a document that he also recorded with the Office of the County Recorder, entitled "Notice of Right to Cancel." (*Id.*, p. 4; Ex. E(6), Dkt. 31, pp. 2-3.) The document purports to serve as a rescission notice under the Truth in Lending Act. (Ex. E(6), Dkt. 31, pp. 2-3.)

4

Watts's Actions Post-Foreclosure

Both before and after the foreclosure sale, Watts sent a series of letters and notices to the Olmsted County Sheriff, a Sheriff's Deputy, and the law firm of Reiter & Schiller, P.A., which served as foreclosure counsel for Wells Fargo. (Am. Compl., Dkt. 40, pp. 4-6.) The documents purport to constitute notices of "Tortious Interference with Perspective [sic] Advantage and Notice of Default." (Ex. B(2), Dkt. 27; Ex. D(5), Dkt. 30; Ex. F(7), Dkt. 32; Ex. G(8), Dkt. 33; Ex. H(9), Dkt. 34.)

Just before the expiration of the redemption period, Watts recorded a series of documents with the Office of the Olmsted County Recorder purporting to show his authority to execute documents on behalf of Wells Fargo; to rescind the foreclosure sale; to revoke the power of attorney recorded to allow Reiter & Schiller to proceed with the foreclosure; and to appoint "United Solutions Corporation" as a "successor trustee" to himself, Reiter & Schiller, and the loan originator. (Am. Compl., Dkt. 40, pp. 6-7; Ex. I(10), Dkt. 35; Ex. J(11), Dkt. 36; Ex. K(12), Dkt. 37.) That same day he recorded a document, purporting to be Wells Fargo's attorney in fact, stating that his mortgage loan account is "fully satisfied in full redemption." (Am. Compl., Dkt. 40, pp. 6-7; Ex. L(13), Dkt. 38, p. 2.) And finally, he recorded a "Warranty Deed to Trustee," purporting to transfer the property from himself and his wife to "United Solutions Corporation." (Am. Compl., Dkt. 40, p. 7; Ex. M(14), Dkt. 39.) Notwithstanding these fraudulent documents, which Watts had no authority to execute or record on behalf of Wells Fargo, on February 3, 2012, Wells Fargo conveyed the property to Freddie Mac. (App. 34-35.)

On March 19, 2012, Watts filed this suit against a number of entities, including Wells Fargo and Freddie Mac, alleging that the foreclosure of his property was invalid for a number of reasons and claiming that he is entitled to $525,000 in damages, plus $90,000 in costs. After Wells Fargo and Freddie Mac moved to dismiss Watts's claims, Watts filed his Amended Complaint on June 10, 2012. Wells Fargo and Freddie Mac move to dismiss Watt's claims in the Amended Complaint in their entirety.

## **Argument**

Although Watts's causes of action far from clear, an expansive reading of his pro se Amended Complaint suggests that Watts alleges claims relating to separation of the Note and Mortgage (Am. Compl., Dkt. 40, pp. 3, 9); rescission under the Truth in Lending Act (*see id*. 4); a default judgment (*see id*. 4-5, 8); and allegedly improper publication of the notice of foreclosure (*see id*. 3-4.)

As the Court well knows, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although a court accepts factual allegations as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *McAdams v. McCord*, 584 F.3d 1111, 1113 (8th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1950). A complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. When plaintiffs have not "nudged their claims across the line from conceivable to plausible," a Court must dismiss the claims. *Twombly*, 550 U.S. at 570.

"Though pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004); *see also Ventura-Vera v. Dewitt*, 417 Fed. Appx. 591 (8th Cir. 2011) (collecting cases applying same rule after *Iqbal* and *Twombly*).

In deciding a motion to dismiss under Rule 12(b)(6), "the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (quotations and citations omitted). Consideration of such materials does not convert the motion into one for summary judgment. *See id.*; *Enervations, Inc. v. Minnesota Mining & Mfg. Co.*, 380 F.3d 1066 (8th Cir. 2004).

## I. The Complaint Fails to State Any Claim Against Freddie Mac.

Nowhere in the Amended Complaint does Watts allege what Freddie Mac did wrong, or even how Freddie Mac is related to his claims at all. Indeed, Freddie Mac's name appears exactly three times in the Amended Complaint: once in the caption naming it as a defendant, in section I on page 1 identifying its places of business, and in section III on page 2 identifying it as a defendant. The remainder of the Complaint simply levies allegations against a singular "Defendant."

Levying allegations against "defendants" as a group or as a singular "defendant" when many are named, without specifying exactly what each defendant allegedly did wrong, will not do under *Iqbal* and *Twombly*. *See Tatone v. SunTrust Mortg, Inc.*, Civ. No. 11-1862, 2012 WL 787411, *9 (D. Minn. Feb. 13, 2012) ("A complaint which lumps

all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant."), *adopted* 2012 WL 763581 (D. Minn. Mar. 8, 2012) (Davis, C.J.); *Tully v. Bank of America, N.A.*, Civ. No. 10-4734, 2011 WL 1882665, *6 (D. Minn. May 17, 2011) (Frank, J.) (same); *see also Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008) ("Vague references to a group of "defendants," without specific allegations tying the individual defendants to the alleged [wrongful] conduct, do not raise a genuine issue of material fact with respect to those defendants."). Watts fails to plead <u>any</u> case against Freddie Mac. Thus, the Court should dismiss all claims against Freddie Mac.

**II.     Watts's Claim that Wells Fargo Failed to Provide Him With the Original Note and Mortgage Fails as A Matter of Law.**

The first allegations in Watts's Amended Complaint basically state that Wells Fargo has not produced "the original wet ink signature" of his note and mortgage, so those documents are unenforceable. Watts's allegations appear to be rooted in both a general theory that a foreclosing lender must produce those documents to prove default and entitlement to foreclosure, and a more specific theory that failure to provide them in response to his request constitutes a violation of RESPA. Both theories fail as a matter of law.

## A. Watts's Legal Theory has Been Rejected by Numerous Courts.

Watts alleges that "Defendant" (but presumably Wells Fargo,[1] as it was the entity that foreclosed) was not entitled to foreclose because it failed to provide proof—in the form of the "original wet ink signature"—of its claim of ownership of the mortgage and loan and Watts's default. (Am. Compl., Dkt. 40, p. 3.) This is a "show-me-the-note" theory, which posits that the party that forecloses on a mortgage must also hold the promissory note (the actual so-called "wet ink" note) in order to be entitled to foreclose. Watts's core theory is that without possession of his original note, Wells Fargo lacked authority to foreclose and thus the mortgage is invalid and unenforceable.

Watts's legal theory is contrary to decisions of both the Eighth Circuit and the Supreme Court of Minnesota. In *Jackson v. Mortgage Electronic Registration Systems, Inc.*, 770 N.W.2d 487 (Minn. 2009), the Minnesota Supreme Court held that a mortgagee (lender) may foreclose on a mortgage even when the mortgagee does not have a legal interest in the promissory note secured by the mortgage. The court expressly stated that "a party can hold legal title to the security interest <u>without holding an interest in the promissory note</u>." 770 N.W.2d at 500. In fact, the court recognized that this is standard practice in the mortgage industry:

> The originating lender routinely sells the mortgage loans on the secondary market to investors such as the Federal National Mortgage Association (Fannie Mae) or the Federal

---

[1] Watts sent the alleged qualified written request to Wells Fargo, he sent the alleged notice of rescission to Wells Fargo, and Wells Fargo is the entity that foreclosed. (Ex. A(1), Dkt. 26, p. 12; Ex. E(6), Dkt. 31, p. 2; App. 17-33.) To the extent Watts alleges that Freddie Mac was involved with these events, the arguments in the follow sections apply equally to Freddie Mac.

> Home Loan Mortgage Corporation (Freddie Mac.) Selling the
> loans provides income for the originator to finance more
> loans. Once on the secondary market, the loans may be sold
> several times or bundled into mortgage-backed securities.

*Id.* at 490. The court in *Jackson* specifically rejected a challenge to the legality of this practice and reiterated that, for over a century, Minnesota law has provided "that the debt, and consequently real ownership of the security instrument, may be in one person 'while what may be termed the 'legal title' to the security instrument is in another.'" *Id.* at 500 (quoting *Burke v. Bachus*, 53 N.W. 458, 459 (Minn. 1892)). *Burke* had established in the 1800s that the power of sale may be exercised only by the party who has legal title to the <u>mortgage</u>, not by the party who holds the note. *Burke*, 53 N.W. at 459. *Jackson* simply reaffirmed that principle in 2009, and confirmed that as long as the security instrument has been assigned and the assignment recorded, the record holder of the mortgage can proceed to foreclose a mortgage by advertisement. 770 N.W.2d at 499. Thus, a foreclosing mortgagee does not need to show the promissory note—original or otherwise—to foreclose.

Just last year, the Eighth Circuit relied on *Jackson* in rejecting the same arguments that Watts raises. In *Stein v. Chase Home Fin., LLC*, 662 F.3d 976 (8th Cir. 2011), the court held that it needed to "look no further than the Minnesota Supreme Court's decision in *Jackson*" to conclude that the record holder of the mortgage "was the party entitled to commence a foreclosure by advertisement under Minnesota law, even if the promissory note . . . had been transferred to someone else." *Id.* at 979, 980.

*Stein* affirmed what Judges in this District have been saying for quite awhile now. *See, e.g.*, *Butler v. Bank of America, N.A.*, Civ. No. 11-461, 2011 WL 2728321, *5 (D. Minn. July 13, 2011) (Frank, J.) ("a reading of the opinion can leave no doubt that *Jackson* holds that a mortgagee is not required to have any interest in the promissory note in order to foreclose"); *Murphy v. Aurora Loan Servs., LLC*, No. 11-cv-2750, 2012 WL 104543, **2-3 (D. Minn. Jan. 12, 2012) (Montgomery, J.) (same). As this Court recently recognized, "it is irrelevant whether [Wells Fargo] can establish that [it] hold the notes." *Pope v. Wells Fargo Bank, N.A.*, Civ. No. 11-2496, 2012 WL 1886493, *3 (D. Minn. May 23, 2012) (Nelson, J.). If Wells Fargo holds the mortgage, and there can be no dispute that it does, as it was assigned the mortgage on February 24, 2003, Wells Fargo "is therefore entitled to foreclose" on Watts's property. *Id*. (*See also* App. 16.)

The principles set forth in *Jackson*, applied by the Eighth Circuit in *Stein*, and repeated by Judges of this Court in *Pope, Butler*, *Murphy*, and others demonstrate that Watts' claim fails on the merits as a matter of law because Wells Fargo (as the foreclosing party) is not required to have an interest in the note and it is thus not required to actually <u>show</u> him the original note in order to foreclose by advertisement in Minnesota.

**B.     Watts's Correspondence is Not a QWR Under RESPA and Watts Has Not Alleged Damages.**

Watts also alleges that Wells Fargo's failure to send him the original note (and respond to a number of other requests in the same correspondence) is a violation of RESPA. (Am. Compl., Dkt. 40, p. 4.) The Amended Complaint contains two copies of

11

the so-called Qualified Written Request ("QWR")[2] that Watts sent to Wells Fargo. (Ex. A(1), Dkt. 26, pp. 12-31; Ex. D(5), Dkt. 30, pp. 9-28.) It is clear from a review of the 20-page correspondence that it is not a QWR under RESPA, so the fact that Wells Fargo "only provided a statement of account" in response does not create liability, nor does it discharge Watts's liability under the note and mortgage. (Am. Compl., Dkt. 40, p. 3.)

Under RESPA, a mortgage-loan servicer must provide a response to a QWR sent by a borrower that seeks "information related to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A). But not all requests sent by a borrower to a servicer constitute QWRs. *See, e.g.*, *Kelly v. Fairon & Assocs.*, --- F. Supp. 2d ---, ---, 2012 WL 361697, at *2 (D. Minn. Feb. 3, 2012) (Doty, J.); *DeVary v. Countrywide Home Loans, Inc.*, 701 F. Supp. 2d 1096, 1108-09 (D. Minn. 2010) (Schiltz, J.). As the language of the statute provides, the information sought must relate to the "servicing" of a loan, which the statute defines as "receiving any scheduled periodic payments from a borrower . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower." 12 U.S.C. § 2605(i)(3). Thus, based on the language of the statute, courts have determined that "[r]equests for information pertaining to the identity of a note holder or master servicer do not relate to servicing" and therefore do not constitute QWRs. *Kelly*, --- F. Supp. 2d at ---, 2012 WL 361697, at *3; *see also Dietz v. Beneficial Loan & Thrift Co.*, Civ. No. 11-3752, 2011 WL 2412738, at *4 (D. Minn. June

---

[2] A QWR is "written correspondence" that includes information identifying the name and account of the borrower and "a statement of the reasons for the belief of the borrower . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

10, 2011) (Frank, J.); *DeVary*, 701 F. Supp. 2d at 1108. In addition, extensive requests and demands for "the original mortgage note and other documents, accounting and invoices related to the Mortgage, and 'return of all profits made off the sale of [Plaintiffs'] mortgage,'" do not constitute a information related to the servicing of a loan for purposes of RESPA. *Smith v. Chase Manhattan Bank, USA*, Civ. No. 10-4341, 2011 WL 1327916, at *3 (D. Minn. Apr. 7, 2011) (Frank, J.) (alteration in original).

The requests and demands in the alleged QWR can be grouped into three categories. First, numbered items 1-10 constitute a list of reasons why Watts alleges he needs the information he requests, such as "to ensure" that the loan "[w]as originated in lawful compliance with all federal and state laws" and that "each servicers and/or sub-servicers of this mortgage has serviced this mortgage in accordance with statute." (Ex. A(1), Dkt. 26, pp. 14-15.) Second, numbered items 11-51, 57-59, 81, 134, 148, 167, 182, 187, and 190 constitute discovery-type document requests. (*Id.* pp. 15-19, 21, 25-27, 29.) In these requests, Watts demands varied documents, such as "certificated or uncertificated security used for the funding of this account," the "front and back of each and every canceled check . . . on this account," and "copies of all forced-placed insurance policies" ordered on the property. (*Id.* pp. 15, 17, 27.) And third, numbered items 52-56, 60-80, 82-133, 135-147, 149-166, 168-181, 183-186, 188-189, and 191 constitute another form of discovery-type requests: interrogatories. (*Id.* pp. 19-29.)

Nowhere in Watts's 20-page set of requests and demands, however, does Watts "identify any reasons for a belief that the account (or payment history) is in error." *Dietz*, 2011 WL 2412738, at *5. Rather, Watts's requests constitute an attempted fishing

13

expedition that might allow him to *find* an error. He does not allege that there actually *was* an error. But "RESPA does not require a servicer to respond to any question that a borrower may ask—no matter how broad, vague or far afield." *DeVary*, 701 F. Supp. 2d at 1106.

Furthermore, Watts does not appear to argue that he was damaged by the alleged failure to adequately respond; instead, he alleges that the failure to respond constitutes an "administrative default" that should result in the release of the mortgage, deletion of the outstanding debt, and $525,000 in damages. (Am. Compl., Dkt. 40, pp. 38.) But an individual is limited to "actual damages," under RESPA, and up to $1,000 in statutory damages for "a pattern or practice of noncompliance." 12 U.S.C. § 2605(f)(1). And a plaintiff "must plead and prove, as an element of the claim, that he or she suffered some actual damage as a result of the alleged RESPA violation." *Hintz* (quotation omitted). Watts has pleaded no allegation of actual damage, and there is no support for his allegation that failure to adequately respond results in cancelation of the debt.

Because the June 28, 2011, letter is not a QWR for purposes of RESPA, and because Watts failed to plead actual damages as a result of any alleged violation of RESPA, this claim should be dismissed.

### III. Watts's Claim for Rescission is Barred by the Statute of Repose and His Failure to Allege an Ability to Tender the Proceeds of the Loan.

Watts also alleges that Wells Fargo failed to honor his rescission request, which was recorded in Olmsted County on July 26, 2011, and is dated that same day. (Am. Compl., Dkt. 40, p. 4; Ex. E(6), Dkt. 31, p. 2.) Because Watts's Complaint was filed

14

more than nine years after Watts and his co-borrower executed the mortgage and was sent after the foreclosure sale, Watts's rescission claim is barred by the statute of repose. (Dkt. 1; App. 30.)

The period for rescission under TILA is, at the latest, three years from the date a loan is consummated. 15 U.S.C. § 1635(f); *see also* 12 C.F.R. § 226.23(a)(3). The three-year period is a statute of repose, rather than a statute of limitation. *See Beach v. Ocwen Federal Bank*, 523 U.S. 410, 417-18 (1998); *Phillippi v. Beneficial Loan & Thrift Co.*, Civ. No. 10-4281, 2012 WL 684873, at *3 (D. Minn. Mar. 2, 2012) (Nelson, J.).

Public records show that the mortgage transaction here occurred on February 24, 2003. Watts alleges in his Amended Complaint that he sent a rescission notice on July 26, 2011, and the notice was recorded that same day. The original Complaint in this action was not filed until March 19, 2012. Regardless of what date is effective for purposes of rescission—the rescission letter or filing this action—it is clear that far more than three years has elapsed since the transaction occurred. *See id* at **3-4 (describing split in authority regarding whether mailed notice of rescission is sufficient to exercise right under TILA). Thus, Watts's claim for rescission is squarely barred by the statute of repose.

Moreover, under the statute, the right to rescind a transaction expires "upon the sale of the property" 15 U.S.C. § 1635(f). Even if three years had not elapsed, the sale of the property at the foreclosure sale on July 8, 2011, extinguished any right Watts may have had to cancel the transaction weeks later, on July 26, 2011.

Finally, Watts does not allege that he has the willingness or ability to tender the loan proceeds, which is a prerequisite to rescission. *See, e.g.*, *Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1172 (9th Cir. 2003); *Dietz*, 2011 WL 2412738, at *3; *Franz v. BAC Home Loans Servicing, LP*, Civ. No. 10-2025, 2011 WL 846835, at *3 (D. Minn. Mar. 8, 2011) (Frank, J.); *Hintz*, 2010 WL 4220486, at *4. In fact, it is clear from the "Notice of Right to Cancel" attached to the Amended Complaint—and recorded with the County Recorder—that Watts believes that Wells Fargo should pay *him* money if the loan transaction is rescinded. (Ex. E(6), Dkt. 31, p. 3.) This theory is unsupported by caselaw or the language of TILA, and thus, Watts's rescission claim fails as a matter of law.

## IV. Watts's Claim that Wells Fargo is in Default Fails as a Matter of Law.

Watts also alleges throughout his Amended Complaint that Wells Fargo's failure to respond to his exhaustive inquiries constitutes an "administrative default" or results in a default judgment eliminating his mortgage-loan debt and requiring clearing of his credit. (Am. Compl., Dkt. 40, pp. 3, 8.) To the extent Watts claims he is entitled to this relief as a result of alleged violations of RESPA, his claim has no support in the law or the language RESPA, which provides for actual damages and $1,000 in statutory damages for a pattern of noncompliance. *See* 12 U.S.C. § 2605(f)(1).

Watts also alleges that Wells Fargo's inadequate response results in a default and consent judgment. (Am. Compl., Dkt. 40, pp. 3, 8.) To obtain a default judgment, a party must apply to the Court. Fed. R. Civ. P. 55. But the documents that Watts relies on to support his allegations of a default judgment predate his filing this action by many months. As this Court explained in denying Watts's motion for a preliminary injunction,

"[t]he determination of whether a default judgment is warranted is made by the Court." (Dkt. 15, p. 11.) There is nothing in the text of Rule 55, or cases interpreting it, that support Watts's theory that allegedly inadequate responses to his demands and notice of rescission results in a default judgment that entitles Watts to $525,000 in damages and $90,000 in costs and "endow[s] him with a specific power of attorney to perform the duties of the 'Defendant.'" (*Id.*)

Based on this alleged authority, Watts has filed numerous documents with the County Recorder purporting to be authorized by Wells Fargo. (Ex. J(11), Dkt. 36, p. 2; Ex. K(12), Dkt. 37, p. 2; Ex. L(13), Dkt. 38, p. 2.) Even if Wells Fargo's responses to Watts's requests were inadequate, there is simply no support for Watts's allegation that the failure of response results in a default judgment under which he is entitled to a half a million dollars in damages. Thus, his claims should be dismissed.

It is worth noting that the voluminous requests and documents that Watts submitted with his purported QWR or to the other defendants appear to be copied from one or more internet websites that are nothing more than hoaxes that claim that copying the boilerplate (and gibberish) forms and serving them on banks will result in forgiveness of debt. The court in *El Ameen Bey v. Stumpf*, 825 F. Supp. 2d 537 (D. N.J. 2011), described a similar scam in some detail, and not surprisingly concluded that none of the online forms states a valid claim. *See also Foster v. Raleigh*, 2010 WL 5391317 (M.D. Pa. 2010) (describing a similar internet scam and holding that pleadings failed to state a claim under Rule 12). Wells Fargo will not discuss the deficiencies in the documents in detail, as most of the problems are evident on the face of the documents.

### V. The Sheriff's Certificate Is Prima Facie Evidence that All Legal Requirements Were Met.

Finally, in his Amended Complaint, Watts asserts a new claim that the foreclosure was invalid because notices of foreclosure were published in the Stewartville Star. (Am. Compl., Dkt. 40, pp. 3-4.) But two Minnesota State District Court opinions are not binding on this Court and are limited to the facts of those cases, which involved properties in Rochester, with the judges deciding that notices of foreclosure for properties in Rochester should be published in a local Rochester paper. In addition, the Sheriff's Certificate serves as prima facie evidence that all legal requirements were met in conducting a foreclosure sale of which Watts clearly had actual notice.

The notices of foreclosure of the property in Byron, Minnesota, were published in the Stewartville Star. (App. 18-19.) Under Minnesota law, the Sheriff's Certificate and Foreclosure Record serves as prima facie evidence that all legal requirements were met:

> Every sheriff's certificate of sale made under a power to sell contained in a mortgage shall be prima facie evidence that all the requirements of law in that behalf have been complied with, and prima facie evidence of title in fee thereunder in the purchaser at such sale, the purchaser's heirs or assigns, after the time for redemption therefrom has expired.

Minn. Stat. § 580.19. The Sheriff's Certificate shows the publication of the notices and postponements of the foreclosure sale, as well as the publisher's affidavit that the Stewartville Star meets the statutory requirements of a qualified newspaper. (App. 18-19.) Minn. Stat. § 331A.02 provides the requirements of a qualified newspaper, which includes being "circulated in the political subdivision it purports to serve." Minn. Stat. § 331A.02, subd. 1(d). Under the statute, the Minnesota Secretary of State provides a list

of newspapers that have applied for classification as qualified newspapers. *Id.*, subd. 1(j). The Stewartville Star is on the Secretary of State's list. *See* List of Legal Newspapers, Minnesota Office of the Secretary of State: Legal Newspapers (last visited June 8, 2012), http://www.sos.state.mn.us/index.aspx?page=98. And it is undisputed that Watts was personally served with the notice of foreclosure and thus had personal knowledge of the sale before it was held. Because the Sheriff's Certificate is prima facie evidence that the legal requirements have been met, Watts's claim that the foreclosure sale is invalid due to publication of the notices in the Stewartville Star fails as a matter of law.

## Conclusion

Wells Fargo and Freddie Mac respectfully request that the Court dismiss the claims against them on the merits and with prejudice.

Dated: June 11, 2012                                **FAEGRE BAKER DANIELS LLP**

 /s Erin L. Hoffman
Charles F. Webber (#215247)
chuck.webber@FaegreBD.com
Erin L. Hoffman (#0387835)
erin.hoffman@FaegreBD.com
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000

Attorneys for Wells Fargo Bank, N.A.
and Federal Home Loan Mortgage Corp.

fb.us.8713558.03