UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

BYRON T. WATTS,                                CIV. NO. 12-692 (SRN/JSM)

     Plaintiff,                        REPORT AND RECOMMENDATION

v.

FEDERAL HOME LOAN MORTGAGE
CORPORATION, a/k/a Freddie Mac;
WELLS FARGO BANK, N.A.,
DAVID E. MUELLER,
Olmsted County Sheriff;
ROXANNE L. DARNELL,
Olmsted County Deputy;

     Defendants.


JANIE S. MAYERON, United States Magistrate Judge

This matter came before the undersigned on Federal Home Loan Mortgage Corporation's and Wells Fargo Bank, N.A.'s Motion to Dismiss Plaintiff's Complaint [Docket No. 21], Federal Home Loan Mortgage Corporation's and Wells Fargo Bank, N.A.'s Motion to Dismiss Plaintiff's Amended Complaint [Docket No. 41] and David Mueller's and Roxanne Darnell's Motion to Dismiss or for a More Definite Statement [Docket No. 3]. Plaintiff Byron T. Watts appeared pro se. Erin L. Hoffman, Esq., appeared on behalf of defendants Federal Home Loan Mortgage Corporation and Wells Fargo Bank, N.A. James P. Spencer, Esq., appeared on behalf of defendants David Mueller and Roxanne Darnell. The matter was referred to the undersigned by District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

# I. BACKGROUND

## A. Procedural History

On February 24, 2003, plaintiff Byron T. Watts obtained a loan from Homeservices Lending, LLC to purchase real property in Byron, Minnesota. Wells Fargo's and Freddie Mac's Memorandum of Law in Support of Motion to Dismiss, Appendix ("Appx."), pp. 1-15 (Watts' mortgage) [Docket No. 43].[1] The loan was secured by a mortgage on the property. Id. The mortgage was immediately assigned to Wells Fargo and the assignment was recorded in the office of the Olmsted County Recorder. Id., p. 16. (assignment of mortgage showing recording data). At some point Watts defaulted on the loan and Wells Fargo initiated a nonjudicial foreclosure (foreclosure by advertisement). Id., pp. 17-33 (foreclosure record). The property was sold to Wells Fargo at a foreclosure sale on July 8, 2011. Id., pp. 30-31 (Sheriff's Certificate of Sale).

---

[1]  The Court may take judicial notice of public records and consider them on a motion to dismiss without converting the motion to one for summary judgment. See Papasan v. Allain, 478 U.S. 265, 269, n. 1 (1986) (the court is "not precluded in [its] review of the complaint from taking notice of matters of public record."); Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007) (in this Circuit, Rule 12(b)(6) motions are not converted into motions for summary judgment simply because one party submits additional matters in support of or opposition to the motion. . . Some materials that are part of the public record or do not contradict the complaint may be considered by a court in deciding a Rule 12(b)(6));Stahl v. United States Dep't of Agric., 327 F.3d 697, 700 (8th Cir. 2003) ("the district court may take judicial notice of public records and may thus consider them on a motion to dismiss."). In addition, the Court may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Parnes v. Gateway 2000, Inc., 122 F.3d 539, 546 (8th Cir. 1997) (citing and quoting In re Donald Trump Casino Sec. Litig., 7 F.3d 357, 368 n. 9 (3d Cir. 1993)).

This Court has considered the following documents submitted by Wells Fargo and Freddie Mac: Watts' mortgage; the recorded assignment of Watts' mortgage from Edina Realty Mortgage to Wells Fargo Mortgage; the recorded Sheriff's Certificate of Sale and Foreclosure Record; and the recorded Limited Warranty Deed for the property from Wells Fargo to Freddie Mac. See Wells Fargo's and Freddie Mac's Memorandum of Law in Support of Motion to Dismiss, Appendix [Docket No. 43].

Wells Fargo conveyed the property to the Federal Home Loan Mortgage Insurance Corporation ("Freddie Mac") by limited warranty deed dated January 23, 2012. Id., p. 34 (limited warranty deed showing recording data).

On March 13, 2012, Freddie Mac commenced a state court action against Watts to evict him from the property. Federal Home Loan Mortgage Corporation v. Watts, Register of Actions, 55-cv-12-1646. On March 19, 2012, Watts sued Freddie Mac, Wells Fargo, Olmsted County Sheriff David Mueller, Olmsted County Deputy Roxanne Darnell, and other defendants[2] in federal court alleging that "defendant" improperly foreclosed on his property. Complaint [Docket No. 1]. Watts, who is pro se, generally alleged that the mortgage encumbering the property was "null and void" because defendant refused to provide him with his original promissory note and Wells Fargo was in "default" for failing to respond to his inquiries regarding the mortgage. Id.

On March 22, 2012, state district court judge Jodi Williamson held a hearing on Freddie Mac's complaint for eviction against Watts. Federal Home Loan Mortgage Corporation v. Watts, Register of Actions, 55-cv-12-1646. Judge Williamson granted the requested eviction and entered judgment on March 23, 2012. However, Judge Williamson stayed entry of the writ of recovery until April 13, 2012, to permit Watts to seek relief in federal court and to seek the assistance of an attorney. Order, 55-cv-12-1646, May 24, 2012.

_____

[2] The Complaint also named Anna Restovich Braun, an attorney representing Freddie Mac, her law firm George F. Restovich & Associates; Caitlin R. Dowlin, Michael R. Sauer and Robert Q. Williams, attorneys representing Freddie Mac, and their law firm Wilford, Geske & Cook P.A.; Edgar O. Ongeri, an attorney representing Wells Fargo Bank, N.A. and his firm, Reiter & Schiller, P.A. Complaint, caption, p. 1. In addition to Wells Fargo, Freddie Mac, Mueller and Darnell, the Amended Complaint named Reiter & Schiller, P.A. and Edgar O. Ongeri, but there is no indication that those defendants were ever served. The Amended Complaint no longer included the attorneys representing Freddie Mac who had been named in the original Complaint.

On May 23, 2012, shortly before midnight, Watts filed a motion in federal court for a temporary restraining order to prevent his eviction. Plaintiff's Motion to Order a Temporary Restraining Order ("Pl.'s TRO Mot."), p. 1 [Docket No. 9]. The next morning, on May 24, 2012, Watts filed a supporting affidavit, which appeared to "cut and paste" the "Plain Statement of Facts" portion of his Complaint. Compare Complaint, pp. 4-9 with Affidavit of Byron Watts in Support of Motion for Temporary Restraining Order ("Watts' TRO Aff.") [Docket No. 9-2].

Additionally, on May 24, 2012 at 9:30 a.m., in an email to U.S. District Court Judge Susan Richard Nelson, Watts forwarded a proposed Order granting a TRO. Watts indicated that an eviction hearing was scheduled for 10:30 a.m. that day and that Judge Williamson had asked him "to bring a Temporary Restraining Order from Federal Court to halt the Eviction and prevent the Writ of Recovery from being executed until the Federal case is decided." Memorandum Opinion and Order ("TRO Order"), p. 3 [Docket No. 15].

On May 24, 2012, Judge Williamson denied Watts' motions to stay or otherwise prevent his eviction. Order, 55-cv-12-1646, May 24, 2012. Judge Williamson noted that Watts had filed "an action in Federal Court, but that no Orders have been issued by that Court and Plaintiff's [sic] assert that they have not been properly served with any Federal pleadings." Id.; TRO Order, p. 3. Finding that "[t]his court has given Defendant's [sic] ample opportunity to address their perceived issue with the foreclosure process," Judge Williamson denied Watts' motions and concluded that Freddie Mac was entitled to enforce the Writ of Recovery the state court had issued on March 22, 2012. Id.; TRO Order, pp. 3-4.

On May 25, 2012, Judge Nelson denied Watts' TRO motion on the grounds that the motion suffered from procedural defects and the motion failed on the merits. Id., p. 6. Watts did not establish that he would be irreparably harmed without the TRO, nor did he establish that any harm could not be compensated by monetary damages. Id. The Court noted that Watts waited a substantial amount of time before seeking injunctive relief, "which vitiates much of the force of . . . allegations of irreparable harm." Id., p. 7 (citation and quotation omitted).

The Court concluded that Watts had little chance of succeeding on the merits of his claims, noting specifically: 1) Watts' failure to distinguish among any of the defendants regarding the acts alleged: 2) Watts' erroneous view that the foreclosing entity had to provide him with his original promissory note before foreclosing; and 3) Watts' erroneous view of what constitutes a default judgment. Id., pp. 10-11.

Following the denial of the motion for the TRO, Watts filed an Amended Complaint on June 10, 2012. [Docket No. 40].

Wells Fargo and Freddie Mac moved to dismiss the Amended Complaint on June 11, 2012. [Docket No. 41]. Darnell and Mueller, who had moved to dismiss the original complaint, stood on their original motion. [Docket No. 3].

**B.**    **The Amended Complaint**

The facts alleged in Amended Complaint consisted of a recitation of the various communications Watts had with "defendant" in connection with his mortgage. Amended Complaint, pp. 3-7. In general, the Amended Complaint alleged that defendants' failure to respond to Watts's written request for information regarding his mortgage, triggered an "administrative process" that culminated in defendants' "default," which in turn absolved Watts of all liability for his mortgage. Id. Believing that defendants'

5

foreclosure on his property was void as a result of their "default," Watts recorded documents in the office of the Olmsted County Recorder purporting to rescind the lender's Notice of Pendency of Proceeding to Foreclose, revoke the power of attorney the lender granted to its foreclosure counsel, redeem the property from foreclosure and transfer the property in to a trust. In essence, the Amended Complaint alleged that because the lender did not satisfactorily respond to Watts's request for information, not only was the entire foreclosure rendered null and void, the lender's inaction resulted in making Watts the lender's "attorney in fact" and satisfied all of Watts's mortgage obligations. Further, the foreclosure was invalid because the Notice of Foreclose was published in the Stewartville Star, which is not "legally recognized" for the publication of foreclosure notices. Id., p. 3.

Specificially, Watts alleged that on or about June 28, 2011, he sent "defendant" a Qualified Written Request ("QWR")[3] for the production of a "wet ink signature."[4] Attached to the Amended Complaint as Exhibit 1(A) is a copy of what Watts' alleged was his QWR. [Docket No. 26]. This document is 191 paragraphs long and contains a section entitled "Default Provisions Under this Qualified Written Request," which supposedly conveyed Wells Fargo's "unlimited power of attorney" to Watts if Wells Fargo "fail[ed] by not rebutting to any part of this RESPA request. . . ." Id., p. 29. This exhibit also included a document called "Notice of Default in Dishonor Consent to

---

[3]    A QWR is a procedure authorized under the Real Estate Settlement Procedures Act ("RESPA") that permits borrowers to request certain information relating to the servicing of their mortgage loans. 12 U.S.C. §2605 (e). The servicer is required to respond to the QWR within sixty days, excluding legal public holidays, Saturdays and Sundays.

[4]    The Court construed this to mean that Watts was seeking his original promissory note.

Judgment." This "Notice of Default" referenced Watts' "QWR" and summarized Wells Fargo's supposed lack of response to the QWR. Id. Also attached were forms entitled "Record of Presentment and Fault Notice" and "Notice of Fault in Dishonor Opportunity to Cure," which appeared to be notices to Wells Fargo that it had not adequately answered Watts' QWR and as a result, Wells Fargo was "in default" and Watts was entitled to Wells Fargo's "Specific Power of Attorney" to perform duties on Wells Fargo's behalf. Id.

After Wells Fargo began the nonjudicial foreclosure against Watts' property, Watts sent Wells Fargo a document entitled "Notice Tortious Interference with Perspective Advantage Notice of Default" in which Watts claimed that he had "first hand knowledge that this note has been satisfied in full." Complaint, Ex. B(2) [Docket No. 27]. Watts demanded that the foreclosure be held in abeyance pending the outcome of the "administrative process" Watts claimed he had initiated. Amended Complaint, p. 3.

Following the foreclosure sale, Watts had the Olmsted County Recorder record a "Notice of Right to Cancel," which Watts claimed was a rescission notice under the Truth in Lending Act ("TILA"). Id., Ex. E(6) [Docket No. 31]. Watts also filed and had recorded in Olmsted County a document entitled "Notice of Revocation of Power of Attorney & Revocation of Signature Affidavit," which purported to revoke Watts' signature on his mortgage and promissory note. Id., Ex. K(12) [Docket No. 37]. Watts had recorded, as Wells Fargo's "attorney-in-fact," a certificate of redemption, stating that the foreclosed property had been redeemed. Id., Ex. L(13) [Docket No. 38]. Finally, Watts executed and recorded a warranty deed to trustee, purporting to convey title to

the foreclosed property to "United Solutions Corporation [as] Trustee of 826 4th Ave. NE Trust."[5] Id., Ex. M(14) [Docket No. 39].

Watts' Amended Complaint challenged the publication of the Notice of Foreclosure in the Stewartville Star newspaper, which Watts alleged was not "legally recognized" for the publication of foreclosure notices for property located in Byron, Minnesota. Id., p. 3. According to Watts, "defendants" sold the property at a sheriff's sale knowing that his concerns of fraud had not been addressed. Id., p. 4.

Watts further alleged that as a result of Wells Fargo's "default" in not responding to his QWR, the balance on his mortgage was reduced to zero, Wells Fargo agreed that Watts owned the property, and Wells Fargo agreed to pay Watts treble damages for committing fraud. Id., p. 8.

As relief, Watts sought a declaration that his mortgage was null and void and his promissory note discharged; an order requiring "defendant" to remove references to the mortgage debt on his credit report and the credit reports of "all members of his family;" an order requiring "defendant" to remove negative references on his credit report and the credit reports of all members of his family; payment of $525,000 in treble damages for "acting in fraud and to commit theft;" and payment of an additional $95,000 in compensatory damages for Watts' alleged expenses in bringing his lawsuit. Id., pp. 8-9.

In sum, the Amended Complaint appears to allege that:(1) the foreclosure on Watts' property was invalid because Wells Fargo did not provide Watts a copy of his original promissory note; (2) Watts was entitled to a rescission of the loan transaction under TILA; (3) Wells Fargo was in "default" and agreed to forgive Watts' mortgage indebtedness as a result of its failure to answer Watts' QWR.

---

[5]     This is the address of the foreclosed property.

**C.    The Bank Defendants' Motion to Dismiss and Watts' Response**

Wells Fargo and Freddie Mac (the "Bank defendants") moved to dismiss Watts' Amended Complaint with prejudice against Freddie Mac because the Amended Complaint was completely silent as to allegations against Freddie Mac. Wells Fargo's and Freddie Mac's Memorandum of Law in Support of Motion to Dismiss Plaintiff's Amended Complaint ("Bank Defs. Mem."), pp. 7-8. [Docket No. 42].

The Bank defendants further argued that to the extent that Watts' Amended Complaint was based on a theory that the foreclosure was invalid because Wells Fargo did not produce Watts' original promissory note, that theory has been rejected time and again. Id., pp. 9-10 (citing Jackson v. Mortgage Electronic Registration Sys., Inc., 770 N.W.2d 487 (Minn. 2009); Stein v. Chase Home Fin., LLC, 662 F.3d 976 (8th Cir. 2011). Jackson and Stein established that the mortgagee or its assignee need not possess the original promissory note to foreclose a mortgage when a borrower defaults. Id.

The Bank defendants also challenged Watts' assertion that what he sent to Wells Fargo on June 28, 2011 was, in fact, a QWR under RESPA. Id., pp. 11-12. Pursuant to 12 U.S.C. §2605(e)(1)(A), a mortgage loan servicer must provide a response to a QWR sent by a borrower that seeks "information related to the servicing of such loan." According to the Bank defendants, Watts' 191 paragraph "QWR" was comprised of a list of reasons why Watts' claimed to need the information and discovery-type document requests and interrogatories. Id., pp. 11-13. Because Watts' correspondence was not a QWR within the meaning of RESPA, and because Watts did not claim any damages as a result of Wells Fargo's supposedly inadequate response, the Bank defendants urged dismissal of all claims arising out of Watts' "QWR." Id., pp. 6-7. Watts' claims that Wells Fargo "defaulted" by not answering the QWR, thereby entitling Watts to the

property free and clear should be dismissed because there was no legal basis for those claims.  Id., p. 17.

The Bank defendants also argued that Watts' claim for rescission under TILA failed because the period for rescission under TILA is, at most, three years from the date a mortgage transaction is completed.  Id., p. 15 (citing 15 U.S.C. §1635(f) and 12 C.F.R. §226.23(a)(3)).  The three-year limitation on rescission is a statute of repose, which completely bars claims after the expiration of the repose period.  Id.  Watts executed the mortgage in 2003, therefore, the window for rescission had long since closed.  Id., p. 15.

The Bank defendants relied on the Sheriff's Certificate of Sale to rebut Watts' claim that publication of the foreclosure notice in the Stewartville Star provided legally insufficient notice to him of the foreclosure sale.  Under Minnesota law, the Sheriff's Certificate of Sale serves as prima facie evidence that all legal requirements regarding a foreclosure have been met.[6]  Id., pp. 18-19.  Further, the Bank defendants submitted that the Stewartville Star is on the Minnesota Secretary of State's list of qualified legal newspapers.  Id., p. 19.

Watts' response to the Bank defendants' motion contained a litany of references to issues not pled, including "defendant's" alleged violation of the Fair Debt Collections Practices Act ("FDCPA").  Plaintiff's Opposition to Defendant's [sic] Motion to Dismiss ("Pl. Resp."), pp. 3-5.  [Docket No. 47].  Watts also invoked the Federal Rules of

---

[6]     Pursuant to Minn. Stat. §580.19, "Every sheriff's certificate of sale made under a power to sell contained in a mortgage shall be prima facie evidence that all the requirements of law in that behalf have been complied with, and prima facie evidence of title in fee thereunder in the purchaser at such sale, the purchaser's heirs or assigns, after the time for redemption therefrom has expired."   It is undisputed that Watts' mortgage contained a power of sale.  Bank Defs. Mem., Appx., p. 13, ¶22.

Bankruptcy Proceedings in support of his contention that he had the right to challenge defendants "right of enforcement." Id., pp. 9-10. Watts appeared to concede that there was no need for Wells Fargo to produce his original promissory note before foreclosing. Id., p. 7 ("The plaintiff agrees with defendant that in normal cases a wet ink signature does not need to be produced in the State of Minnesota for a foreclosure to be valid."), Id., p. 9 ("The Defendant asserts that they [sic] are not required to produce the note in a non-judicial foreclosure. This is true."). At the same time, Watts persisted in his argument that "the defendants" did not have possession of the "instrument" and therefore had no standing to foreclose. Id. Watts also disputed that the Sheriff's Certificate of Sale presented prima facie evidence of the legality of the foreclosure sale in light of the fact that the Sheriff had ignored his "fiduciary responsibility" to "verify" the concerns Watts raised before the sale. Id., p. 6.

**D.** **Olmsted County Defendants' Motion to Dismiss or for a More Definite Statement and Watts' Response**

Neither the Complaint (on which the Olmsted County defendants' motion was based) nor the Amended Complaint alleged any specific claims against Sheriff Mueller or Deputy Darnell (the "Olmsted County defendants"). Sheriff Mueller's name appeared on the Affidavit of Service of the Notice of Mortgage Foreclosure and the Sheriff's Certificate of Sale. Bank Defs. Mem., Appx., p. 21, 30. Deputy Darnell signed the Sheriff's Certificate of Sale. Id., p. 30. Consequently, the Olmsted County defendants surmised that they were sued for their respective roles in the foreclosure proceeding. Id., p. 2.

The Olmsted County defendants moved for dismissal pursuant to Fed. R. Civ. P. 8(a)(1) and (2) because the Complaint failed to allege a basis for the Court's jurisdiction

and failed to describe any claims against them. Defendants David E. Mueller and Roxanne L. Darnell's Memorandum of Law in Support of Its [sic] Motion to Dismiss or for a More Definite Statement Under Fed. R. Civ. P. 12(e) ("Olmsted County Defs. Mem."), pp. 1-3 [Docket No. 6]. Consequently, the Olmsted County defendants could neither answer the Complaint nor file an effective Rule 12 motion to dismiss. Id., p. 2. In the alternative, the Olmsted County defendants moved for a more definite statement pursuant to Fed. R. Civ. P. 12(e) because the Complaint was so vague that they could not respond to it. Id., p. 1.

In response, Watts contended that the Olmsted County defendants proceeded with the foreclosure even though Watts had warned them that there was a controversy regarding the foreclosure. Plaintiff's Response to Motion to Dismiss ("Pl. Resp. to Olmsted County Defs."), p. 1 [Docket No. 8][7]; see also Amended Complaint, Ex. D(5) ("Warning and Notice to Sheriff")[8] [Docket No. 30]. Watts summarized his response to the Olmsted County defendants' motion as follows: "[t]he defendant's [sic] motion to dismiss should be denied because Defendant [sic] have not provided sufficient evidence of perfected security interest as a secured creditor as required by F.R.B.P. 3001, therefore lacks Standing to enforce the Promissory Note." Pl. Resp. to Olmsted County Defs., p. 1.

---

[7]   This pleading is unsigned and undated.

[8]   This "warning" consisted of a hand written note signed by Watts "as agent for Byron T. Watts" stating that fraud was being committed in connection with the sheriff's sale by Wells Fargo and its foreclosure counsel. According to Watts, he sent this notice to the Olmsted County Sheriff's department, which "acknowledged the fraud and continued to move forward." Amended Complaint, p. 4.

## II.    STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6) the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true.  Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).  In addition, "the court must resolve any ambiguities concerning the sufficiency of the plaintiffs' claims in favor of the plaintiffs, and give the plaintiffs the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in their complaint."  Ossman v. Diana Corp., 825 F. Supp. 870, 880 (D. Minn. 1993) (internal quotation marks and citations omitted).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, (2007) and Ashcroft v. Iqbal, 556 U.S. at 662 (2009).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  This pleading requirement does not require detailed factual allegations.  Martin v. ReliaStar Life Ins. Co., Civil No. 09-01578 (MJD/AJB), 2010 WL 1840877 at *8 (D. Minn. 2010) (citing Twombly, 550 U.S. at 555). On the other hand, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).  Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 677 (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Id. at 678. "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Ritchie v. St. Louis Jewish Light, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. In summary, the pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted).

A complaint that does not sufficiently identify and allege which facts or claims apply to which defendants fails to state a claim for relief because it does not provide fair notice to a particular defendant. Tatone v. SunTrust Mortg, Inc, Civ. No. 11-1862 2012 (MJD/JSM), 2012 WL 763581 at *9 (D. Minn. Mar. 8, 2012); See also Tully v. Bank of America, N.A., Civ. No. 104734 (DWF/JSM), 2011 WL 1882665 at *6 (D. Minn. May 17, 2011) (citing Liggens v. Morris, 749 F. Supp. 967, 971 (D.Minn.1990)) ("Plaintiffs assert each of the causes of action against the Defendants generally, but do not otherwise specify which claims are asserted against any particular defendant, or which specific claims each Plaintiff is asserting. Thus, the Bank Defendants, and the Court, are left to guess which Plaintiffs are asserting which claims against which Defendants. The Court concludes that such pleading is inadequate and that Rule 8 requires greater specificity than that found in Plaintiffs' Amended Complaint.").

Although pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced. Stone v. Harry, 364 F. 3d 912, 914 (8th Cir. 2004). Courts will not construct legal theories for a pro se plaintiff. Id.

"Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend." Michaelis v. Nebraska State Bar Ass'n., 717 F.2d 437, 438-39 (8th Cir. 1983). Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate. Ikechi v. Verizon Wireless, Civ. No. 10-4554 (JNE/SER), 2011 WL 2118797 at *5, n. 6 (D. Minn. April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011 WL 2118791 at *3 (D. Minn. May 25, 2011) (Order adopting the Report and Recommendation of Magistrate Judge Rau regarding dismissal of plaintiff's fraud claims for failure to satisfy the particularity requirement of Rule 9(b)); see also McLean v. United States, 566 F.3d 391, 400-401 (4th Cir. 2009) ("to the extent…that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice. Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (a pro se litigant should be given chance to amend complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment.").

The Olmsted County defendants have moved in the alternative for a more definite statement pursuant to Fed. R. Civ. P. 12(e). As described below, this Court is recommending that Watts' Amended Complaint against the Bank defendants be dismissed with prejudice and his claims against the Olmsted County defendants be dismissed without prejudice, making it unnecessary to decide the Olmsted County defendants' motion for a more definite statement.

## III. DISCUSSION

### A. <u>The Amended Complaint Failed to State Any Claims Against Freddie Mac</u>

Before beginning its analysis, the Court makes the following general observation. Throughout the Amended Complaint, Watts referred to the defendants in the singular and failed to distinguish between any of them regarding the acts alleged. It appeared to this Court that Freddie Mac had nothing to do with Watts or his property until Wells Fargo conveyed the property to Freddie Mac by a Limited Warranty Deed recorded on February 3, 2012 in Olmsted County. Bank Defs. Mem, Appx., p. 34. The Olmsted County defendants had nothing to do with the property until the foreclosure sale. At the motion hearing, Watts insisted that lumping the defendants together was appropriate because they all "worked together," although he did not say how.

Watts' failure to distinguish between the defendants did not provide fair notice to either Freddie Mac or Wells Fargo of the claims against them. Therefore, the Amended Complaint failed to meet the Rule 8 pleading standard and this Court would recommend dismissal of the Amended Complaint on that basis alone. <u>See</u> Section II, <u>supra</u>. Nonetheless, the Court will examine in some detail the allegations in the Amended

Complaint to clarify the basis of its recommendations regarding dismissal with prejudice against the Bank defendants.

As for Freddie Mac, this Court cannot discern any possible claims against it in Watts' Amended Complaint. In fact, Freddie Mac is referenced only three times in the Amended Complaint—in the case caption, the statement of jurisdiction, and the identification of the parties. Amended Complaint, pp. 1-2. Nowhere does Watts reference or identify his claims against Freddie Mac, much less any facts to support claims against Freddie Mac. Nor does Watts address this issue in his response to defendants' motions to dismiss. "It is well-established that party concedes an issue by failing to address it in an opposing brief." American Registry of Radiologic Technologists v. Bennett, 655 F. Supp.2d 944, 946 fn. 2 (D. Minn. 2009).

This Court can conceive of no set of circumstances under which Freddie Mac would be liable to Watts. As a result, re-pleading would be futile. Therefore, the Court recommends dismissal with prejudice of Watts' claims against Freddie Mac.

**B.      Watts' Claims Against Wells Fargo are Meritless**

**1.      Wells Fargo had Standing to Foreclose**

Watts' claim regarding Wells Fargo's "standing" to foreclose seemed to be based on the fact that he entered into the mortgage agreement with HomeServices, but Wells Fargo conducted the foreclosure. This would explain Watts' claim that he "has reason to believe that the Defendant was not the real party of interest for the loan he made…." (Amended Complaint, p. 3) and why he requested the original loan documents or documents "link[ing] the original lender to [Wells Fargo]. Id. at p. 5. Because the original loan documents have not been produced, Watts argues that Wells Fargo is not entitled to foreclose on the mortgage. Watts is wrong.

Watts signed a promissory note and granted HomeServices a mortgage on the property to secure the note. The terms of the note and mortgage provided that both instruments were freely assignable or otherwise transferable without prior notice to Watts. Bank Defs. Mem., Appx., pp. 12,15. HomeServices assigned the mortgage, which contained a power of sale, to Wells Fargo Home Mortgage, Inc. Id., p.16. The assignment was recorded with the Olmsted County Office of County Recorder on March 19, 2003. Id. When Watts defaulted on the loan, Wells Fargo foreclosed by advertisement, which it was entitled to do by virtue of the power of sale contained in the mortgage.

Minnesota Statute §580.02(3) describes the prerequisites for foreclosure by advertisement, including the requirement that the "the mortgage has been recorded and, if it has been assigned, that all assignments thereof have been recorded; provided, that, if the mortgage is upon registered land, it shall be sufficient if the mortgage and all assignments thereof have been duly registered." The assignment of the mortgage from Homeservices Lending to Wells Fargo was recorded and there is no allegation that there were any unrecorded assignments of the mortgage. Therefore, to the extent that any of Watts' claims rested on a theory that Wells Fargo was not the "real party in interest" or lacked standing, the Court rejects those claims.

## 2. All claims based on a "show me the note" legal theory fail

To the extent Watts alleged that Wells Fargo was required to produce or have possession of his original promissory note before foreclosing, that theory is contrary to Jackson v. Mortgage Elec. Reg. Sys., Inc., 770 N.W.2d 487 (Minn. 2009) and Stein v. Chase Home Fin., LLC, 662 F.3d 976 (8th Cir. 2011), which hold that the mortgagee or its assignee need not possess the original promissory note to foreclose a mortgage

when a borrower defaults.  See also Mustafa v. Bank of America, N.A., Civ. No. 12-590 (DWF/TNL), 2012 WL 3612083 at *2 (D. Minn. Aug. 21, 2012) (gathering cases from the District of Minnesota rejecting the theory that a mortgagee with legal title to property must also possess or have an interest in the promissory note to foreclose by advertisement).  All claims based on that theory should be dismissed.

### 3.    Watts' RESPA claim fails

Loan servicers such as Wells Fargo are required to respond to legitimate QWRs under 12 U.S.C. § 2605(e)(1).[9]  A QWR is defined as:

---

[9]    Pursuant to 12 U.S.C. § 2605(e)(2), a loan servicer must:

(2) Action with respect to inquiry.  Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—

(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and (i i) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

> [A] written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--
>
>> **(i)** includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>>
>> **(ii)** includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

The information sought through a QWR must relate to the "servicing" of a loan. 12 U.S.C. §2605(e)(1)(A). Servicing is defined as "receiving any scheduled periodic payments from a borrower . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower." Kelly v. Fairon & Associates, 842 F. Supp. 2d 1157, 1157 (D. Minn. 2012) (citing 12 U.S.C. § 2605(e)(1)(A)). "Requests for information pertaining to the identity of a note holder or master servicer do not relate to servicing" and are not QWRs. Id. A request for information need not be answered under RESPA if it does not "provide[ ] sufficient detail to the servicer regarding . . . information sought by the borrower." Devary v. Countrywide Home Loans Inc., 701 F. Supp. 2d 1096, 1107 (D. Minn. 2010) (quoting 12 U.S.C. § 2605(e)(1)(B)(ii)).

---

> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

Watts' correspondence to Wells Fargo was not a QWR. Nowhere in the document does Watts provide a statement explaining his belief that the account is in error. Rather, the correspondence posed rambling, repetitive, discovery-style document demands and interrogatories, including his demand that Wells Fargo produce "the original uncertificated or certificated security. . . [i]n the event you do not supply me with the very security, it will be a positive confirmation on your part that you never really created or owned one." Amended Complaint, Ex. A(1).

A clue to what Watts thought he was doing by sending Wells Fargo this correspondence is found on page two of the letter, which stated that Watts has authorized an audit of his mortgage by unnamed "mortgage auditing and predatory servicing or lending experts." Id., p. 2.[10] Watts claimed to need answers to the ensuing 191 questions to facilitate the "audit." Id., p. 3. It appeared highly unlikely to this Court that Watts, a pro se party, drafted the 191 questions. It seemed more likely that he compiled the questions based on various such requests (which also purport to be QWRs) circulating on the Internet. See, eg. http://www.scribd.com/doc/91551485/Killer-QWR-Qualified-Written-Request (twenty-page "killer" "QWR" posing many of the same questions found in Watts "QWR"); http://www.loansafe.org/forum/unite-fight-share-your-ideas-how-homeowners-can-fight-back-against-fraud/14574-mother-of-all-qwrs-guaranteed-make-em-squirm-sweat-bucket.html (purported "QWR" posing many of the same questions as Watts' "QWR" and stating that "default provisions exist under this Qualified Written Request," as did Watts' "QWR").

---

[10] The Federal Trade Commission issued a consumer alert in March, 2010, warning consumers against forensic loan audits as a way to avoid foreclosure, reduce loan principal or cancel loans. http://ftc.gov/bcp/edu/pubs/consumer/alerts/alt177.shtm.

Even if Watts' correspondence was a QWR, which it was not, Watts failed to allege actual damages. Remedies under RESPA relating to QWRs are governed by 12 U.S.C. § 2605(f)(1), which allows damages of an:

> amount equal to the sum of: (A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000."

"[A] RESPA plaintiff must plead and prove, as an element of the claim, that he or she suffered some actual damage as a result of the alleged RESPA violation." Hintz v. JPMorgan Chase Bank, N.A., Civ. No. 10-2825 (MJD/JJK) 2011 WL 579339 at *9 (D. Minn. Feb. 8, 2011) (quotation omitted). Watts' alleged damages are that the lack of response from Wells Fargo constituted an "administrative default" that declared the mortgage invalid, discharged the debt owned, and entitled Watts to $525,000.00 in "treble" damages. (Amended Complaint, p. 3). Watts failed to plead any actual damages or a "pattern or practice of noncompliance." In summary, to the extent that Watts was claiming a violation of RESPA, those claims fail.

### 4. Watts' claim that Wells Fargo "defaulted" by failing to answer his "QWR" is meritless

Watts' allegation that "defendants" (presumably, Wells Fargo) "defaulted" by not adequately answering his "QWR" thereby endowing him with a specific power of attorney to perform the duties of the "defendant" (including filing an Appointment of Successor Trustee, Notice of Rescission, Revocation of Power of Attorney, Certificate of Redemption, and Warranty Deed with the Olmsted County Recorder) is sheer folly.

To the extent that Watts' claims could be construed to mean that he was entitled to default judgment against Wells Fargo those claims also fail. Rule 55 of the Federal

Rules of Civil Procedure sets forth the procedure for obtaining a default judgment. Watts, as the party seeking the default judgment, must first "by affidavit or otherwise show that the party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." Fed. R. Civ. P. 55(a). Then, in light of the relief he is seeking, Watts must apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2). Suffice it to say that the determination of whether a default judgment is warranted is made by the Court, not by the party.

**5.      Watts' TILA claim fails**

On July 26, 2011, Watts filed a "Notice of Right to Cancel" under TILA. Amended Compliant, Ex. E(6). This Notice was to have the effect of canceling the mortgage and declaring it of no force or effect. <u>Id</u>. The Court finds that Watts' attempt to rescind the mortgage is barred by the statute of repose and recommends that this claim be dismissed.

TILA authorizes a borrower whose loan is secured with his "principal dwelling" to rescind the loan transaction entirely "until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required ... together with a statement containing [certain] material disclosures ..., whichever is later." 15 U.S.C. §1635(a). If the required TILA disclosures are never made, then the borrower's right of rescission "shall expire three years after the date of consummation of the transaction or upon sale of the property, whichever occurs first." 15 U.S.C. § 1635(f). The three year period is a statute of repose that "governs the life of the underlying right" to rescind. <u>Beach v. Ocwen Federal Bank</u>, 523 U.S. 410, 417 (1998).

The mortgage transaction between Watts and HomeServices occurred on February 24, 2003, and the mortgage was assigned to Wells Fargo that same day. Banks Defs. Mem., Appx., pp. 1-2, 15, 16. Consequently, assuming that the requisite disclosures were not made (and there is no evidence they were not), the period for rescission expired on February 24, 2005. Watts filed the Notice of Rescission more than six years after that, on July 26, 2011. Amended Complaint, Ex. J(11) (Notice of Rescission) [Docket No. 36]. Additionally, the property was sold on July 8, 2011. Bank Defs. Mem., Appendix, p. 30. Even if the three years had not expired before the property was sold, the sale of the property extinguished the right of rescission. Watts' claim for rescission under TILA fails as a matter of law. Furthermore, the Court could find no reference in Watts' Amended Complaint or motion papers establishing that the property was his "principal dwelling"—a threshold requirement under TILA.

### 6.     The Notice of Foreclose was properly published

Finally, Watts alleged that the foreclosure was invalid because notice of foreclosure was published in the Stewartville Star, a newspaper that Watts claims "is not legally recognized for foreclosures in the town of Byron because it has a distribution that is not likely to reach [Watts' property] as required by statute." Amended Complaint, p. 3. According to Watts, Judge Williamson declared two foreclosures invalid for the same reason. Amended Complaint, pp. 3-4. According to the Bank defendants those two cases involved property located in Rochester, Minnesota, not Byron, and the Judge decided that the foreclosure notices should be published in a Rochester newspaper. Bank Defs. Mem., p. 18.

Before a mortgagor can foreclose by advertisement, the mortgagor is required to provide six weeks' published notice and, at least four weeks before the sale, serve the

notice on the person in possession of the mortgaged premises "in like manner as the summons in a civil action in the district court. . . ." and the notice of sale must be published in a qualified newspaper in the <u>county</u> in which the property is located. Minn. Stat. §§ 580.03 (describing requirement of six weeks published notice of the mortgage foreclosure and personal service of the notice); 645.11 (defining "published notice"); 645.13 (defining "successive weeks" in the context of publication of notice). The statutory definition of a qualified legal newspaper includes the requirement that the paper:

> be circulated in the political subdivision which it purports to serve, and either have at least 400 copies regularly delivered to paying subscribers, or 250 copies delivered to paying subscribers if the political subdivision it purports to serve has a population of under 1,300, or have at least 400 copies regularly distributed without charge to local residents, or 250 copies distributed without charge to local residents if the political subdivision it purports to serve has a population of under 1,300.

Minn. Stat. §331A.02 (d).

The publisher of the Stewartville Star provided an affidavit of publication in connection with the foreclosure stating that the "newspaper has complied with all of the requirements constituting qualifications as a qualified newspaper, as provided by Minnesota Statute 331A.02 . . . ." Bank Defs. Mem., Appx., pp. 18-19 (Affidavit of Publication). The Stewartville Star is published in Stewartville, in Olmsted County, Minnesota. http//www.thinkstewartville.com/main/asp?SectionID=14. Watts' property in Byron, Minnesota is located in Olmsted County. Except for Watts' completely unsupported statement that the Stewartville Star "has a distribution that is not likely to reach the property at 826 4th Ave. NE Byron, MN 55920 as required by statute," (Amended Complaint, p. 3), there is no evidence that the Stewartville Star does not

meet the statutory requirements for publication of the Notice of Foreclosure.  As there is no dispute regarding the actual substance of the notice, the Court concludes that the requirements of Minn. Stat. § 580.03 were met.

In addition, the Sheriff's Certificate of Sale was prima facie evidence that all legal requirements for foreclosure by advertisement were met.  See Minn. Stat. § 580.19. Watts has not presented any evidence to rebut this prima facie showing.  On that additional basis, the Court finds that all legal requirements for foreclosure by advertisement were met.

### 7.    Watts' FDCPA claims fail

Watts referenced the Fair Debt Collections Practices Act in his response brief, although it was not at all clear what his claims were under the FDCPA or to whom the references were directed.  Pl. Resp., pp. 3-5.  The majority of his argument on this point related to cases in which foreclosure counsel have been found to be subject to the FDCPA.  Id.  The Amended Complaint named Reiter & Schiller and Edgar O. Ongeri, Wells Fargo's foreclosure counsel, but did not allege any acts by them, nor is there any evidence that they were ever served with the Amended Complaint.

To the extent that Watts was complaining about any action of Wells Fargo in connection with his default, Wells Fargo, as a creditor, is not subject to the FDCPA. See 15 U.S.C. §1692a(4), (6) (distinguishing "debt collector" from "creditor"; Lansing v. Wells Fargo Bank, N.A., Civ. No. 11-3132 (DSD/AJB), 2011 WL 6754083 at *1-2 (D. Minn. Dec. 23, 2011) (noting that "a distinction between creditors and debt collectors is fundamental to the FDCPA, which does not regulate creditors' activities at all" and rejecting plaintiff's argument that Wells Fargo, which initiated nonjudicial foreclosure proceedings against plaintiff's property, was a "debt collector" within the meaning of the

FDCPA) (internal citation and quotation omitted). At any rate, "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." Morgan Distrib. Co., Inc. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989) (internal citation and quotation omitted). Therefore, the Court will not consider an unpled claim.

**C.    The Olmsted County Defendants' Motion to Dismiss or for a More Definite Statement**

Watts failed to allege the basis of this Court's jurisdiction over the Olmsted County defendants. Because their only appearance in this case appears to be related to the foreclosure proceeding, this Court concluded that if Watts can make out any claims against the Olmsted County defendants, they would be state law claims. To the best of this Court's knowledge, Watts, Darnell and Mueller are all Minnesota citizens, therefore there is no diversity jurisdiction.

In light of this Court's recommendation that all of Watts' claims against the Bank defendants be dismissed, the Court should decline to exercise supplemental jurisdiction over Watts' state law claims, whatever they may be, against Mueller and Darnell. See 28 U.S.C. § 1367 (c)(3) (the district court may decline to exercise supplemental jurisdiction over a claim when the court has dismissed all claims over which it has original jurisdiction); Johnson v. City of Shorewood, 360 F.3d 810, 819 (8th Cir. 2004) ("The Supreme Court has noted that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine. . will point toward declining to exercise jurisdiction over the remaining state-law claims.") (internal quotation and citation omitted).

The Court recommends that any claims against Mueller and Darnell be dismissed without prejudice so Watts can pursue them in state court.

## IV.    RECOMMENDATION

For the reasons set forth above, IT IS RECOMMENDED THAT:

1.  Freddie Mac's and Wells Fargo's Motion to Dismiss be granted and Watts' claims be dismissed with prejudice.

2.    David Mueller's and Roxanne Darnell's Motion to Dismiss be granted and Watts' claims against them be dismissed without prejudice.


Dated: October 30, 2012


*Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

### NOTICE

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **November 13, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within fourteen days after service thereof. A judge shall make a de novo determination of those portions to which objection is made.